(C. D. 1385)

JULIUS FORSTMANN & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 16, 1952)

*Strauss & Hedges* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: As originally enacted, paragraph 1531 of the Tariff Act of 1930 contained a provision for "belts    *    *    *    wholly or in chief value of leather." At the time of importation of the articles at bar, the provision had been modified by the General Agreement on Tariffs and Trade, T. D. 51802, so that belts wholly or in chief value of leather (except reptile leather), designed to be worn on the person, were made dutiable at the rate of 17½ per centum ad valorem, while belts wholly or in chief value of leather (except reptile leather), other than those designed to be worn on the person, were made dutiable at the rate of 20 per centum ad valorem. The collector

of customs imposed duty on the articles at bar under the latter provision.

It is contended on behalf of the plaintiff that the said articles are not belts at all and are properly dutiable under the catch-all provision for leather products in the same paragraph, as modified, at the rate of 17½ per centum ad valorem. For ready reference, the pertinent portions of paragraph 1531, as modified, *supra*, are quoted in the margin.[1]

The imported articles are described on the invoice as "Shammy White Rubbing Aprons," and it is undisputed that they are used in a process of making worsteds from wool known as the "French system." During the course of that process, it appears that at a certain stage the carded and combed wool is known as "slivers" to which it is desired to impart a "sort of rope effect," i. e., a twisting, in order ultimately to create yarn therefrom. The purpose of the aprons, the articles at bar, is to bring about the desired rope form which will be made into yarn in the following process.

The apron, as represented by plaintiff's exhibit 1, consists of a piece of leather 6¼ inches wide and 20 inches long which is joined at the ends to make a loop or endless affair. According to the evidence, in the French system of making worsteds they are used in pairs, one above the other, each being placed on two rolls, approximately 2 inches in diameter, one at each end, which rolls, in turn, are attached to shafts. There is apparently little or no spacing between the pairs of aprons, so that they rub against each other or against the slivers which are fed between them, as hereinafter explained. One of each of the rolls on which each apron is placed is a power-driven roll, the other being an idler roll. The power that is applied to the rolls causes both a forward motion and a lateral oscillating motion, which results in a combined action. As the rolls move in opposite directions, the bottom of the upper apron and the top of the lower apron move in the same forward direction, but as the lateral motion in the case of each roll also is opposite, the result is that the sliver which is fed between the aprons at one end of the apparatus is subjected to the oscillating rubbing action at the same time it moves forward and emerges from the other end of the apparatus in twisted form.

---

[1] The table follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1531 | * * * belts, * * * wholly or in chief value of leather (except reptile leather) * * *, manufactures of leather (except reptile leather) * * *: | |
| | Belts designed to be worn on the person_____ | 17½% ad val. |
| | * * * belts * * *; any of the foregoing not provided for heretofore in this item_____ | 20% ad val. |
| | Other_____ | 17½% ad val. |

From a reading of the record and the brief filed on behalf of the·
plaintiff, it appears that the plaintiff does not question that the pro-
vision for belts under which the merchandise was classified encom-
passes belts used in connection with machinery, but that it contends
that the term "belts" as so used is limited to such articles as transmit
power or material from point to point by rotating on wheels or rolls.

In the brief filed in its behalf plaintiff has cited and quoted from the
decision of our appellate court in the case of *United States* v. *Richards*,
1 Ct. Cust. Appls. 537, T. D. 31548, involving "apron leathers,"
which were described as leathers of a peculiar preparation used, after
importation, to be made into conveyors or conveyor belts in worsted
machines. The question there at issue was whether such leather
was "belting leather," and it was contended that belting leather was
limited to such as was used for the transmission of power from wheel
to wheel or axis to axis. The court concluded that belting leather
included leather for use as belts for the transmission of materials as
well as for the transmission of power. During the course of the
opinion, the court said:

It is no doubt true that in mechanics, and strictly speaking, a belt is confined
to an instrument for the transmission of power, but that even is not confined to
a leather belt, as all the lexicographic definitions will show. "Belt" is a generic
term, the function of which differs greatly according to the use to which it is put.
Primarily it is the well-known band around the waist, of whatever material com-
posed; in its secondary sense it includes a band or strip, joined at the ends, usually
longer than it is wide, and employed in a variety of purposes, such as belts in
the primary sense above mentioned. Belts for the conveyance of power, and ex-
tending to and not excluding therefrom belts for the transmission from point to
point of motion and materials, of which the articles for the manufacture of
which these importations are the materials are a prominent, extensive, and well-
understood class.

In United States *v.* Horrax (T. D. 31187; 1 Ct. Cust. Appls., p. 142) this court
held that certain bands used in cigarette machines for the transmission of tobacco
from point to point were belts. It was contended in that case that they were
not 'such, because belts were used only for the transmission of power from point
to point.

Counsel for the plaintiff likewise cites the case of *F. Bredt & Co.* v·
*United States*, 32 Treas. Dec. 284, T. D. 37063, wherein this court
held that cotton felt, used for making belts which rotate on rolls or
cylinders in paper-making machines and convey pieces of paper and
pulp over hot cylinders for the purpose of drying the same, was "belt-
ing for machinery" within a tariff provision therefor in paragraph
262 of the Tariff Act of 1913. Counsel has quoted the following from
the decision of this court, written by the late Judge Cooper, in that
case:

* * * But whether the merchandise is used to transmit motion from one
part of the machine to another or whether it is used solely for transporting the

materials, it is used to rotate on wheels, rolls, or cylinders on a machine, and such an article is commonly understood to be a belt.

Based upon the foregoing citations and quotations, counsel for the plaintiff contends that "to respond to the judicial definition of 'belts' "—

* * * the merchandise must be used "for the transmission from point to point of motion and materials" by rotating on wheels or rolls * * *.

and contends that the record in the case at bar shows that the aprons in issue convey nothing from point to point by rotating on wheels or rolls.

The record clearly shows, however, that the aprons rotate on rolls. Plaintiff's witness de Nooyer testified (R. p. 11):

* * * These aprons, in addition to rotating, they also oscillate * * *.

[R. pp. 12–13]:

CHIEF JUDGE OLIVER: To what are these aprons attached?

THE WITNESS: They are attached to rolls, which in turn are on a shaft and which rotate. These rolls rotate, and depending upon the number of turns that are to be made, there is an eccentric bushing which varies the speed at which it turns, to which these aprons are attached.

*       *       *       *       *       *       *

CHIEF JUDGE OLIVER: There are two rolls, one at each end, and as they rotate, the apron rotates likewise?

THE WITNESS: That is correct.

It also appears that as the aprons rotate on the rolls, they carry the slivers through the rubbing operation and deliver the twisted slivers to the next succeeding operation. Witness de Nooyer testified (R. pp. 10–11):

Q. Will you please describe to the court the manner in which rubbing aprons such as Exhibit 1 are used?—A. The rubbing aprons are used in pairs. There are various types of them. This is a shammy finished rubbing apron. In the manufacture of coarser yarns some may have grooves in them, but this is smooth and finished in the manner that shammy skin is finished. They are finished whereby the splicing is done so as to cause the minimum of roughing up of the surface. *An arrow is stamped on to indicate in which way the apron is to travel.* They operate in pairs. There is one apron at the upper level; there is another apron at the lower level, and as this one moves in this direction, the other one below rotates in the opposite direction. While this is in process, there are slivers of material, after the manufacture of worsted top. The slivers are not quite yarn yet, *and move along.* These aprons, in addition to rotating, they also oscillate in this manner, *and usually there are two strands of slivers going through,* and while the ordinary processing of yarn from top is through drafting, the purpose of these aprons, and by having them oscillate and rub, is to bring about in a rope form what will ultimately be fine yarn in the following process. [Italics added.]

The substance of the witness' testimony is that wool slivers are fed into one end of the rubbing apparatus containing the moving aprons and are transferred by the forward part of the motion of the aprons to

the other end of the apparatus, the lateral or oscillating part of the motion at the same time serving to impart the desired twist to the material. It therefore follows that in the forward part of the motion the aprons do transmit material, to wit, the slivers, from point to point, that is, through the length of the rubbing apparatus.

It is probably correct to say that the imparting of the twist effect to the slivers is the primary purpose of the aprons, and the transmission of the slivers from point to point at the same time is only incidental to the effectuation of the primary purpose. Assuming this to be so, the question remains, are the articles nonetheless belts? We think this question must be answered in the affirmative.

Plaintiff, who here seeks to establish that the articles at bar are not belts, has not contended that a commercial meaning for the term "belts" existed in the trade and commerce of the United States at or about the time of the passage of the Tariff Act of 1930 which differed from the common meaning thereof and from which articles such as the aprons at bar were excluded. Therefore, no question of the application of the rule of commercial designation is involved, and in the absence of the manifestation of a contrary legislative intent, the issue must be determined on the basis of whether or not the common meaning of the tariff term "belts" includes articles such as those at bar.

As stated by our appellate court in the *Richards* case, *supra*, "belt" is a generic term. It has many meanings besides the most common one which refers to those used on the person. Webster's New International Dictionary, 2d edition, 1945, after referring to belts used on the person, gives a general meaning as follows:

3. Any encircling, girdling, or extended strip, stripe, or series of things resembling or suggesting a belt.

and gives the following special meaning with reference to machinery:

9. *Mach.* A flexible band, usually broad and flat, made of leather, rubber, woven fabric, or other materials. It passes around two or more pulleys, cylinders, cones, or the like, for communicating motion, transmitting power, conveying material, changing velocity ratios of shafts (by using pulleys of different diameters), etc.

Referring to the definition of the word "apron" in the same dictionary, we find that in a machinery sense an apron is a form of belt:

15. *Mach.* * * * e. An endless belt for conveying material of any kind;— called also *traveling apron.* [Italics quoted.]

In the light of the foregoing, we think the aprons at bar are fairly within the tariff term "belts," and accordingly the protest claim is overruled. Judgment will issue accordingly.